# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF LOUISIANA
# SHREVEPORT DIVISION

| | |
|---|---|
| JIMMIE IVORY and JAMES IVORY | CIVIL ACTION NO. 09-0072 |
| VERSUS | JUDGE S. MAURICE HICKS, JR. |
| PFIZER INC. | MAGISTRATE JUDGE HORNSBY |

## MEMORANDUM RULING

Before the Court is a Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6) [Record Document 7], filed on behalf of Defendant, Pfizer Inc. Defendant seeks dismissal of Counts I-V and VII of the Complaint and James Ivory's request for damages. Plaintiffs oppose this motion. For the reasons stated herein, Defendant's Motion to Dismiss is **GRANTED in part** and **DENIED IN PART.**

## FACTUAL BACKGROUND

This case involves the prescription medication Chantix, a smoking-cessation aid, made by Defendant Pfizer Inc. ("Pfizer"). Plaintiff Jimmie Ivory ("Mrs. Ivory") began using Chantix in December 2007 for its indicated use, to stop smoking. Mrs. Ivory alleges that unbeknownst to her, her prescribing physicians, or the medical community in general, Chantix presented a definite risk of serious injury and death, including suicide. She asserts seven causes of action based on injuries purportedly associated with her use of Chantix: Construction or Composition Defect (Count I); Design Defect (Count II); Inadequate Warning (Count III); Breach of Express Warranty (Count IV); Breach of Implied Warranty (Count V); Redhibition (Count VI); and a "Punitive Damage Claim" (Count VII). [Doc. 1, Petition]. Additionally, although her husband, James Ivory ("Mr. Ivory"), did not ingest

Chantix or plead any independent causes of action, he seeks damages on his own behalf for loss of consortium and negligent infliction of emotional distress. Id.

With the exception of Plaintiffs' redhibition claim, Defendant contends Plaintiffs' causes of action fail as a matter of law and seeks dismissal of Counts I-V and VII of Plaintiffs' Complaint, including Mr. Ivory's request for damages, pursuant to Federal Rule of Civil Procedure 12(b)(6). [Docs. 7, 9]. Defendant argues that Mrs. Ivory's composition defect, design defect, failure to warn, and express warranty claims, as well as Mr. Ivory's claim for damages, all fail to satisfy the basic pleading standard set forth in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007). Additionally, with respect to the design defect and failure to warn claims, Defendant contends Mrs. Ivory (i) failed to plead the existence of an alternative design, and (ii) improperly pled that Pfizer owed a duty to warn consumers generally, notwithstanding that under Louisiana's "learned intermediary" doctrine such a duty to warn runs only to Mrs. Ivory's prescribing physician. As for Mrs. Ivory's breach of implied warranty and punitive damages claim, Defendant asserts that these claims are neither recognized nor permitted under Louisiana law under the circumstances presented in this case. [Docs. 7, 9].

**LAW AND ANALYSIS**

**1.     Motion to Dismiss Standard**

Federal Rule of Civil Procedure 12(b)(6) allows for dismissal of an action "for failure to state a claim upon which relief can be granted." While a complaint attached by a Rule 12(b)(6) motion does not need detailed factual allegations, in order to avoid dismissal, the plaintiff's factual allegations "must be enough to raise a right to relief above the speculative

level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 127 S.Ct. 1955, 1964-65, 167 L.Ed.2d 929 (2007); see also, Cuvillier v. Taylor, 503 F.3d 397, 401 (5th Cir. 2007). A plaintiff's obligation "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. The Supreme Court recently expounded on the Twombly standard, explaining that a complaint must contain sufficient factual matter to state a claim to relief that is plausible on its face. Ashcroft v. Iqbal, – U.S. –, 129 S.Ct. 1937, 1949 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

It is well-established that the Court must construe the complaint in the light most favorable to the plaintiff and accept all well-pleaded factual allegations as true. Id., 129 S.Ct. at 1949-50; In re Katrina Canal Breaches Litig., 495 F.3d 191, 205 (5th Cir. 2007). The tenet that a court must accept all allegations contained in a complaint as true, however, is applicable only to *factual* allegations and does not apply to legal conclusions. Id., 129 S.Ct. at 1949. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. "Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than more conclusions." Id. While legal conclusions may provide the framework for a complaint, they must be supported by factual allegations demonstrating the plausibility of plaintiff's "entitlement to relief." Id.

**2. Construction Defect, Design Defect, Inadequate Warning (Counts I, II, III)**

Defendant seeks dismissal of Counts I, II, and III on the ground that Plaintiffs merely restated the statutory language of the Louisiana Products Liability Act ("LPLA"), La. R.S. § 9:2800.51 *et seq.*, untethered from any meaningful, underlying factual allegations. [Doc. 9, pp. 2-3]. A review of Plaintiff's petition reveals that each count, when read alone, is simply a formulaic recitation of the elements from the LPLA. See Petition, ¶¶ 110-42 . However, Counts I, II, and III must be read in context with the entire petition, including the one hundred and four factual averments immediately preceding Counts I-VII. Id.

**A. Construction Defect (Count I)**

To prevail on a construction or composition defect claim under Louisiana law, a plaintiff must show that: (1) the defendant is a manufacturer of the product; (2) the product proximately caused the plaintiff's damage; (3) the damaging characteristic of the product rendered it "unreasonably dangerous in construction or composition "; and (4) the plaintiff's damages arose from a reasonably anticipated use of the product. See Rollins v. St. Jude Medical, 583 F.Supp.2d 790, 800 (W.D.La. 2008) (citing Gomez v. St. Jude Med. Daig Div., Inc., 442 F.3d 919, 932 (5th Cir. 2006)). "A product is unreasonably dangerous in construction or composition if, at the time the product left its manufacturer's control, the product deviated in a material way from the manufacturer's specifications or performance standards for the product or from otherwise identical products manufactured by the same manufacturer." La. R.S. § 9:2800.55.

Mrs. Ivory alleges numerous facts in her petition in support of her claim that Chantix is unreasonably dangerous in construction or composition, including the following: (1)

Chantix, indicated for use as an aid to quit smoking, is designed to work by specifically inhibiting nicotine receptors in the human brain [Petition, ¶¶ 17, 20]; (2) in theory, Chantix is supposed to work by blocking dopamine so that the cravings for nicotine are diminished and the psychological pleasure derived from smoking is reduced [¶ 28]; (3) Defendant failed to adequately study the mechanism of action and the effects thereof [¶ 30]; (4) Defendant failed to adequately study Chantix to determine the risk of serious injury and/or death associated with its use, as evidenced by Defendant's exclusion of certain patients from clinical trials and intentionally ignoring any proper evaluation of depression or suicidal thoughts [¶¶ 31-32]; (5) Defendant knew or should have known that Chantix increases the risk of causing serious injuries and/or death, including suicide, based on (i) medical reports documented as early as 1972 linking cytosine (the active ingredient in Chantix) to cases of suicide and attempted suicide [¶¶ 36-37], (ii) the numerous adverse event reports from the FDA concerning suicide and attempted suicide after patients initiated Chantix treatment [¶¶ 38-43], (iii) regulatory action and reviews from the FDA indicating increased risk of depression, agitation, suicidal ideation and suicidal behavior [¶¶ 44-47], (iv) known risks associated with other drugs with similar mechanisms of action [¶ 48], (v) results of clinical trials demonstrating the increased risk of serious injury and/or death [¶¶ 49-52], and (vi) data indicating the efficacy of Chantix is no better than a placebo or the nicotine patch [¶¶ 53-57]. Additionally, Ms. Ivory avers that she was prescribed Chantix for its intended use, that she used Chantix in a proper and reasonably foreseeable manner, that Chantix caused her to suffer past, present, and future damages, including suicidal thoughts and behavior, and that she would not have used Chantix had she been aware of the risks associated with or caused by Chantix. [¶¶ 6-16].

The Count finds that these factual averments are more than sufficient "to raise a right to relief above the speculative level" for an alleged construction or composition defect. See Twombly, 550 U.S. at 555, 127 S.Ct. at 1964-65. Accordingly, Defendant's motion to dismiss Count I is DENIED.

### B. Design Defect (Count II)

To establish a design defect under the LPLA, a plaintiff must show that at the time the product left the manufacturer's control, (1) "[t]here existed an alternative design for the product that was capable of preventing the claimant's damage," and (2) "[t]he likelihood that the products design would cause the claimant's damage and the gravity of that damage outweighed the burden on the manufacturer of adopting such alternative design and the adverse effect, if any, of such alternative design on the utility of the product." La. R.S. § 9:2800.56. However, plaintiffs' petition, read in its entirety, is completely devoid of *any* reference to an alternative design. Plaintiffs fail to even allege that an alternative design existed, much less that any such design would have reduced the adverse effects or that the burden of adopting such design was less than the likelihood and gravity of damages associated with Chantix as designed. Therefore, in the absence of any allegation regarding a required element necessary to obtain relief, Defendant's motion to dismiss Count II is GRANTED. See Rios v. City of Del Rio, Tex., 444 F.3d 417, 420-21 (5th Cir. 2006) ("the complaint must contain either direct allegations on every material point necessary to sustain a recovery...or contain allegations from which an inference fairly may be drawn that evidence on these material points will be introduced at trial") (quoting 3 Wright & Miller, Fed. Prac. & Proc.: Civil 2d § 1216 at 156-59); see also, Guidry v. Events Pharms., Inc., 418 F.Supp.2d 835, 842 (M.D.La. 2006) (recognizing that an "alternative

design" capable of preventing the plaintiff's damage is an "essential element" of a design defect claim under La. R.S. § 9:2800.56); Green v. BDI Pharms., 803 So.2d 68, 78 (La.App. 2 Cir. 2001) (same).

### C. Inadequate Warning (Count III)

To maintain a failure to warn or inadequate warning claim under the LPLA, a plaintiff must prove that, at the time the product left the manufacturer's control, "the product possessed a characteristic that may cause damage and the manufacturer failed to use reasonable care to provide an adequate warning of such characteristic and its dangers to users and handlers of the product." Stahl v. Novartis Pharms. Corp., 283 F.3d 254, 261 (5th Cir. 2002) (quoting La. R.S. § 9:2800.57). Plaintiffs' inadequate warning claim arises, in part, from the alleged lack of inadequate information on the label and package insert for Chantix concerning the risk for serious injury and/or death. [Petition, ¶ 67]. Specifically, Plaintiffs state that 21 C.F.R. § 201.57 requires the following information on every drug label:

> 1) *Contraindications*: "Under this section heading, the labeling shall describe those situations in which the drug should not be used because the risk of use clearly outweighs any possible benefit. These situations include administration of the drug to patients known to have a hypersensitivity to it . . ." 21 C.F.R. § 201.57(d)
>
> 2) *Warnings*: "Under this section heading, the labeling shall describe serious adverse reactions and potential safety hazards, limitations in use imposed by them, and steps that should be taken if they occur. The labeling shall be revised to include a warning as soon as there is reasonable evidence of an association of a serious hazard with a drug; a causal relationship need not have been proved. . . ." 21 C.F.R. § 201.57(e)

> 3) *Precautions*: "This subsection of the labeling shall contain information regarding any special care to be exercised by the practitioner for safe and effective use of the drug." 21 C.F.R. § 201.57(f)(1)
>
> 4) *Adverse Reactions*: "An adverse reaction is an undesirable effect, reasonably associated with the use of the drug, that may occur as part of the pharmacological action of the drug or may be unpredictable in its occurrence." 21 C.F.R. § 201.57(g). For clarification the section further reads: *"The 'Warnings' section of the labeling or, if appropriate, the 'Contraindications' section of the labeling shall identify any potentially fatal adverse reaction."* Id. (emphasis supplied).

[¶ 70].

Plaintiffs further aver that:

> The information contained in the product label and package insert is insufficient for many reasons, including but not limited to the following: a) the label fails to explicitly warn of increased risk for serious injury and/or death; and, b) the label fails to reference the severity of such serious injuries; and/or c) the label fails to provide adequate information advising consumers of appropriate action if certain adverse events are experienced.

[¶ 73].

Based on these allegations, the Court can reasonably infer that Defendant failed to provide an adequate warning of the dangers associated with the use of Chantix. See Ashcroft v. Iqbal, – U.S. –, 129 S.Ct. 1937, 1949 (2009) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").

Defendant contends Count III should nevertheless be dismissed to the extent Plaintiffs contend Pfizer had a duty to warn anyone other than Mrs. Ivory's prescribing physician. [Doc. 9, p.10]. Louisiana applies the "learned intermediary doctrine" to product

liability claims involving prescription drugs. Under this doctrine, a drug manufacturer discharges its duty to consumers by *reasonably* informing prescribing physicians of the dangers of harm from a drug. Stahl, 283 F.3d at 265. Plaintiffs allege, however, that Defendant failed to "advise instruct or warn plaintiff *or* prescribing *or* administering physicians" of Chantix's risk of harm and adverse effect, and failed to "adequately warn prescribing doctors *and* users." [Petition, ¶¶ 91, 117]. Therefore, because Plaintiffs pleaded the requisite factual allegations to state a claim for inadequate warning under La. R.S. § 9:2800.57, Defendant's argument based on the "learned intermediary doctrine" is premature at this stage of the proceedings. Accordingly, Defendant's motion to dismiss Count III is DENIED.

**3.     Breach of Express Warranty (Count IV)**

In addition to the theories of liability discussed above, the LPLA imposes liability on a manufacturer when a product "does not conform to an express warranty made at any time by the manufacturer about the product if the express warranty has induced the claimant or another person or entity to use the product and the claimant's damage was proximately caused because the express warranty was untrue." La. R.S. § 9:2800.58. In the petition, Plaintiffs allege that Defendant represented to consumers and the medical community that Chantix was "safe, efficacious, and fit for its intended purposes, that it was of merchantable quality, that it did not produce any unwarned-of dangerous side effects, and that it was adequately tested." [Petition, ¶ 120]. Defendant allegedly made such representations "through its labeling, advertising, marketing materials, detail persons,

seminar representations, publications, notice letters, and regulatory submissions," and fraudulently concealed information about the safety and efficacy of the drug. [¶ 121].

Defendant contends Count VI should be dismissed because Plaintiffs failed to state the "explicit words" that purportedly create the express warranty made by Defendant. [Doc. 9, pp. 4-5]. But the Court does not believe that Twombly requires the plaintiff to set forth such precise, detailed allegations. See Twombly, 550 U.S. at 555, 127 S.Ct. at 1964-65. Plaintiffs' factual allegations concerning Defendant's alleged breach of express warranty are more than enough at the pleading stage "to raise a right to relief above the speculative level." Accordingly, Defendant's motion to dismiss Count IV is DENIED.

### 4. Mr. Ivory's Damages

At the conclusion of Plaintiffs' petition, Mr. Ivory seeks damages for "loss of consortium" and as a person "within the zone of danger and a participant" in Mrs. Ivory's suicide attempt. [Petition, ¶¶ 145-46]. Defendant contends Mr. Ivory failed to "identify any meaningful basis for the damages sought," and that the claims "are untethered from any factual allegations, and rely only on terse legal conclusions." [Doc. 9, pp.6-7].

#### A. Loss of Consortium

It is well-settled that Louisiana law recognizes a cause of action for loss of consortium. Ferrell v. Fireman's Fund Ins. Co., 696 So.2d 569, 573 (La. 1997); see also, De Atley v. Victoria's Secret Catalogue, LLC, 876 So.2d 112, 116 n.2 (La.App. 4 Cir. 2004) ("Damages recoverable under the LPLA include pain and suffering, medical expenses, damage to property, other than to the product itself, and loss of consortium, to name a few.") (citing John Kennedy, A Primer on the Louisiana Products Liability Act, 49 La.L.Rev.

565, 579-80 (1989)). A loss of consortium claim is "derivative" of the predicate tort claim; in other words, it is a "secondary layer of tort liability inuring to the benefit of a person whose relationship with the primary tort victim has been diminished as a result of the defendant's negligence." Scott v. Istar Real Estate Serv., Inc., 2005 WL 287151, *2 (E.D.La. Feb. 3, 2005) (citing Ferrell, 696 So.2d at 574). The compensable elements of a spouse's loss of consortium claim include (1) loss of love and affection; (2) loss of companionship; (3) loss of material services; (4) loss of support; (5) impairment of sexual relations; and (6) loss of felicity. Id. (citing Ferrell, 696 So.2d at 573 n.4).

In the petition, Plaintiffs allege that as a result of consuming Chantix, Mrs. Ivory suffered from depression, aggressive behavior, erratic behavior, mood swings, panic attacks, and that on December 21, 2007, Mrs. Ivory attempted suicide by exiting a moving vehicle operated by Mr. Ivory. [Petition, ¶ 15]. Mr. Ivory further avers that, at all times pertinent hereto, he was married to and living with Mrs. Ivory and, as such, "suffered damages, past, present and future, for loss of consortium." [¶ 145]. Taking the factual allegations relating to Mrs. Ivory's injuries as true, and recognizing that Mr. Ivory's claim derives from his wife's injuries, the Court finds Mr. Ivory's allegations sufficient to state a claim for damages for loss of consortium. Accordingly, Defendant's motion to dismiss Mr. Ivory's allegations for loss of consortium is DENIED.

### B. Negligent Infliction of Emotional Distress

Mr. Ivory alleges he "was in the zone of danger and a participant in the event" and is therefore entitled to all damages by law. [¶ 146]. Construing the petition liberally and in the light most favorable to Plaintiffs, the Court will construe Mr. Ivory's allegations as a request for damages for negligent infliction of emotional distress.

Louisiana law allows "persons who view an event causing injury to another person" to recover damages for negligent infliction of emotional distress if (i) the injured person "suffer[s] such harm that one can reasonably expect a person in the claimant's position to suffer serious mental anguish or emotional distress from the experience," and (ii) the claimant's mental anguish or emotional distress is "severe, debilitating, and foreseeable." La. C.C. art. 2315.6(A), (B). "In order to recover, the claimant who observes the injury-causing event...must be contemporaneously aware that the event has caused harm to the direct victim." Trahan v. McManus, 728 So.2d 1273, 1279 (La. 1999). The Louisiana Supreme Court has held, however, that a negligent omission (such as a failure to adhere to a prescribed duty) is not an injury-causing event by which a claimant is contemporaneously aware that the event caused harm to the direct victim. Id. at 1280. In Trahan, the state's highest court refused to allow the claimant to recover bystander damages resulting from a physician's negligent conduct:

> Even [if] the injury-causing event was the doctor's negligent discharge of the patient, that event was not a traumatic event likely to cause severe contemporaneous mental anguish to an observer, even though the ultimate consequences were tragic indeed. There was no observable harm to the direct victim that arose at the time of the negligent failure to treat, and no contemporaneous awareness of harm caused by the negligence. The doctor's negligent discharge of the patient, accompanied by mistaken assurances that the patient would soon recover, was not itself an emotionally shocking event....

Id.

Here, Mr. Ivory does not allege that he witnessed Mrs. Ivory ingest Chantix or that he was aware, at that precise time, that the Chantix caused Mrs. Ivory harm. Rather, Mr. Ivory asserts that Mrs. Ivory's injuries came to light in the months following the

vaccinations. See e.g., Maurice v. Eli Lilly & Co., 2005 WL 3542902, *5 (E.D.La. Nov. 7, 2005) (finding that parents of minor child failed to state a claim for negligent infliction of emotional distress where they did not witness the vaccinations of the minor child and were not aware, at the time of vaccination, that the minor child suffered harm). Accordingly, the Court concludes that the allegations in Plaintiffs' petition are insufficient to state a claim for negligent infliction of emotional distress.

Furthermore, even if the allegations set forth in Plaintiffs' petition were sufficient to state a claim, the LPLA does not allow recovery of damages for negligent intentional of emotional distress. Because the LPLA provides the exclusive remedy for injuries allegedly caused by Defendant, see infra, this claim must be dismissed.

## 5. Breach of Implied Warranty (Count V)

Defendant contends Mrs. Ivory's claim for breach of implied warranty falls outside the purview of the LPLA and must be dismissed. [Doc. 9, p.11]. The LPLA "establishes the exclusive theories of liability for manufacturers for damages caused by their products," and a plaintiff "may not recover from a manufacturer for damage caused by a product on the basis of any theory of liability that is not set forth" in this Act. La. R.S. § 9:2800.52. In Jefferson v. Lead Ind. Ass'n, Inc., 106 F.3d 1245, 1251 (5th Cir. 1997), the Fifth Circuit explained that:

> While the statutory ways of establishing that a product is unreasonably dangerous are predicated on principles of strict liability, negligence or warranty, respectively, neither negligence, strict liability, nor breach of express warranty is any longer viable as an independent theory of recovery against a manufacturer. Further, *breach of implied warranty* or redhibition *is no longer available as a theory of recovery for personal injury*, although a redhibition action is still viable against the manufacturer to recover pecuniary loss.

Id. (emphasis added) (internal citations omitted).

It is apparent that Plaintiffs' allegations of breach of implied warrant fail to state a claim against Defendant under the LPLA and must be dismissed. Furthermore, to the extent Plaintiffs' contend a claim for breach of implied warranty is a form of redhibition for which Plaintiffs may recover damages for economic loss, Plaintiffs' breach of implied warranty claim is duplicative of their claim for redhibition (Count VI). See Dawson Farms, LLC v. BASF Corp., et al., 2008 WL 5220517, *2 (W.D.La. Dec. 12, 2008) (a claim for breach of implied warranty "arises under the Redhibition chapter and allows recovery for damage to the product itself and economic loss"). Accordingly, Defendant's motion to dismiss Count V is GRANTED.

### 6. Punitive Damage Claim (Count VII)

It is well-settled under Louisiana jurisprudence that punitive or other penalty damages are not allowable unless expressly authorized by statute. Int'l Harvester Credit Corp. v. Seale, 418 So.2d 1039, 1041 (La. 1988). The LPLA, which provides the exclusive theories of liability against a manufacturer, does not authorize punitive damages. Bladen v. C.B. Fleet Holding, Co., 487 F.Supp.2d 759, 770 (W.D.La. 2007) (citing La. R.S. §§ 2800.51-.59). Plaintiffs even acknowledge that Louisiana law precludes recovery of such damages in their petition, instead arguing that "provisions of other state laws are applicable here" and that "plaintiff is therefore entitled to...punitive and/or exemplary damages based on the willful, reckless, wanton and/or egregious nature of the conduct of the defendants that occurred in other states." [Petition, ¶ 144].

Plaintiffs request this court apply article 3546 of the Louisiana Civil Code, a general choice of law provision that allows punitive damages to be awarded when authorized:

> (1) By the law of the state where the injurious conduct occurred and by either the law of the state where the resulting injury occurred or the law of the place where the person whose conduct caused the injury was domiciled; or
>
> (2) By the law of the state in which the injury occurred and by the law of the state where the person whose conduct caused the injury was domiciled.

However, Article 3546 expressly excludes products liability claims for its scope and does not apply to Plaintiff's claim for punitive damages. See La. C.C. art. 3545 cmt. (a). Rather, Plaintiffs' claim is governed by Article 3545, which unambiguously provides that Louisiana law governs "liability for injury caused by a product, as well as damages, whether compensatory, special, or punitive," when the injury is sustained in Louisiana by a Louisiana domiciliary or resident or when the product was manufactured or acquired in this state and caused injury to a Louisiana domiciliary. See La. C.C. art. 3545.

Plaintiffs allege that Mrs. Ivory acquired Chantix in Louisiana, that she was injured in Louisiana, and that both she and her husband were domiciliaries of the state. Consequently, Article 3545 governs Plaintiffs' claim for punitive damages. Therefore, because Louisiana law expressly prohibits recovery of punitive damages for product liability claims, see supra, Defendant's motion to dismiss Count VII is GRANTED.

## CONCLUSION

For the reasons stated herein, Defendant's Motion to Dismiss [Record Document 7] is **GRANTED in part** and **DENIED IN PART.** Plaintiffs' claims for design defect (Count II), breach of implied warranty (Count V), punitive damages (Count VII), and Mr. Ivory's claim for damages for negligent infliction of emotional distress are **DISMISSED WITH PREJUDICE**, while Plaintiffs claims for construction or composition defect (Count I),

inadequate warning (Count III), breach of express warranty (Count IV), and Mr. Ivory's claim for damages for loss of consortium survive.

**THUS DONE AND SIGNED** in Shreveport, Louisiana, this 30th day of September, 2009.

_____
S. MAURICE HICKS, JR.
UNITED STATES DISTRICT JUDGE